UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW CARTER, | 4:22-CV-04103-RAL |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION TO AMEND AND SCREENING AMENDED COMPLAINT FOR DISMISSAL IN PART AND DIRECTING SERVICE IN PART |
| KELLIE WASKO, SECRETARY OF CORRECTIONS, INDIVIDUAL AND OFFICIAL CAPACITY; DAN SULLIVAN, WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; JESSICA COOK, ASSOCIATE WARDEN, INDIVIDUAL AND OFFICIAL CAPACITY; SAMUEL YOST, UNIT COORDINATOR, INDIVIDUAL AND OFFICIAL CAPACITY; CRAIG MOUSEL, MAIL ROOM CLERK, INDIVIDUAL AND OFFICIAL CAPACITY; TAMMY MERTENS-JONES, CULTURAL SPIRITUAL ACTIVITIES COORDINATOR, INDIVIDUAL AND OFFICIAL CAPACITY; MARLIN'S, INC. d/b/a CBM MANAGEMENT d/b/a SUMMIT FOOD SERVICES, CATERING/FOOD SERVICE PROVIDER, INDIVIDUAL AND OFFICIAL CAPACITY; ARAMARK CORRECTIONAL SERVICES, LLC., CATERING/FOOD SERVICE PROVIDER, INDIVIDUAL AND OFFICIAL CAPACITY, | |
| Defendants. | |

Plaintiff Matthew Carter filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court

granted Carter leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Doc.

6. Carter timely paid his initial filing fee on August 15, 2022. This Court screened Carter's

complaint under 28 U.S.C. § 1915A, dismissing the complaint in part and directing service upon

defendants in part. Doc. 11. Carter now moves to amend his complaint to add new defendants and to bring additional claims against existing defendants. Doc. 13.

Under Federal Rule of Civil Procedure 15(a)(1)(A), Carter may amend his complaint once as a matter of course within "21 days after serving it[.]" Carter filed his motion to amend three days after his complaint was screened and before defendants had been served. See Doc. 13. Thus, Carter's motion to amend is within the window provided by Rule 15(a)(1)(A), and Carter may amend his complaint. This Court will now screen Carter's additional claims under 28 U.S.C. § 1915A.

## I.    1915A Screening of Amended Complaint

### A.    Factual Allegations of Carter's Amended Complaint

Carter claims that Summit Food Services, the food provider at the South Dakota State Penitentiary until October 2022, failed to accommodate his needs for a religious diet. Doc. 13-1 at 3. Carter, who professes to be a Satanist, claims that the State Penitentiary provides religious diets for followers of several other religions but not for him. See id. He alleges that this problem has continued since Aramark Correctional Services became the food provider at the State Penitentiary on October 1, 2022. Id. at 3-4. Carter alleges that the failure to provide a religious diet has caused him physical, emotional, spiritual, and psychological pain. Id. He claims that he has been forced to eat "dog slop" and that he has been discriminated against because of his religious beliefs. Id.

Carter does not allege additional facts against the existing defendants, but he seeks to add new claims against these defendants. See id. at 2. Specifically, he seeks to bring claims for violation of his Eighth Amendment right to be free from cruel and unusual punishment and his Fifth Amendment and Fourteenth Amendment due process rights. Id. He also alleges unspecified

"Fourteenth Amendment violations" and violation of his rights under the Prison Litigation Reform Act. Id. He further alleges violation of his "[r]ight to be free from abuse of discretion on part of prison administration, [p]rotection from unconstitutional administrative action, [and] [p]rotection of a prisoner's life and health from administrative action." Id.

In a supplement, Carter states that he seeks additional forms of injunctive relief. Doc. 18 at 1. He wants religious services for "Satanic Worship" to be offered as a "religious activity[.]" Id. He wants to be allowed to order all religious items he requires to worship freely. Id. He also wants to be allowed to follow "the Satanic diet of [his] chosing [sic] that is pleasing to [his] God[,]" including the observance of Satanic holidays. Id. Carter asks for reimbursement for his $350 in filing fees and for a "$100 leather Bible" thrown away by State Penitentiary officials. Id.

## B.     Legal Standard

A court when screening under § 1915A must assume as true all facts well pleaded in the complaint. Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam) (citations omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell

3

Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation omitted). If a complaint does not contain these bare essentials, dismissal is appropriate. See Beavers v. Lockhart, 755 F.2d 657, 663-64 (8th Cir. 1985) (citation omitted). Twombly requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint "must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing Twombly, 550 U.S. at 553-63)). Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation removed) (quoting Twombly, 550 U.S. at 556). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

## C. Carter's Causes of Action

### 1. Carter's Existing Claims as Brought Against Summit Food Services and Aramark Correctional Services

Carter brings claims against Summit Food Services and Aramark Correctional Services[1] for failure to accommodate his religious dietary needs. Doc. 13-1 at 3-4. Although Carter does

---

[1] Summit Food Services and Aramark Correctional Services are private entities that provide food services to prisons. See Doc. 13-1 at 2. Thus, because Carter alleges that Summit and Aramark have contracted with the Sioux Falls State Penitentiary to provide food services, he alleges that they acted under color of state law and can be sued under § 1983. See West v. Atkins, 487 U.S. 42, 56 n.14 (1988). The Court will treat Summit and Aramark as acting under color of state law for screening purposes but makes no finding of fact on that point.

4

not indicate which claims he seeks to bring against Summit and Aramark, he does state that "all 9 defendants have and continue to cause" him harm. See id. at 5. Thus, construing his amended complaint liberally, this Court finds that Carter seeks to bring all claims against Summit and Aramark. See id. This Court will consider Carter's previous claims as brought against Summit and Aramark, then screen his new claims against all defendants.

### a.    Official Capacity Claims for Money Damages

Carter brings claims against Summit and Aramark in their official capacities for money damages. Doc. 13-1 at 2. Summit has previously contracted with the State Penitentiary to provide food services and Aramark is currently contracted with the State Penitentiary to do so. See id. As the Supreme Court of the United States has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Brandon v. Holt, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. Id. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." Id. at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. Id. But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. See Pearson v. Callahan, 555 U.S. 223, 242-43 (2009) (citing County of Sacramento v. Lewis, 523 U.S. 833, 841 n.5 (1998)). Here, Carter seeks both money damages and injunctive relief. Doc. 1 at 13; Doc. 18 at 1. The State of South Dakota has not waived its sovereign immunity. Thus, Carter's claims against Summit and Aramark in their official capacities for

money damages are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

>   **b.**     **Individual Capacity Claims and Official Capacity Claims for Injunctive Relief**

"[A] private corporation cannot be held liable under [§] 1983 '*solely* because it employs a tortfeasor.' " <u>Smith v. Insley's Inc.</u>, 499 F.3d 875, 881 n.4 (8th Cir. 2007) (internal quotation omitted) (quoting <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1216 (10th Cir. 2003). Instead, the plaintiff must show that "there was a policy, custom, or official action [of the private entity] that inflicted an actionable injury." <u>Johnson v. Hamilton</u>, 452 F.3d 967, 973 (citing <u>Sanders v. Sears Roebuck & Co.</u>, 984 F.2d 972, 975-76 (8th Cir. 1993)). Here, Carter claims that the food and diet options provided by Summit and Aramark caused his injuries. Thus, he alleges that his injuries were caused by official actions of these entities.

>   **(1)**     **First Amendment Free Exercise Claim**

Carter claims that Summit and Aramark have violated his free exercise rights under the First Amendment. Doc. 13-1 at 2. In order to state a First Amendment free exercise claim, Carter must allege facts showing that prison officials have substantially burdened the free exercise of his religion. <u>Patel v. U.S. Bureau of Prisons</u>, 515 F.3d 807, 813 (8th Cir. 2008). Substantially burdening the free exercise of religion means that the regulation

>   must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

<u>Murphy v. Mo. Dep't of Corr.</u>, 372 F.3d 979, 988 (8th Cir. 2004) (cleaned up). Carter alleges that he has been prevented from freely exercising his religion because Summit and Aramark have not provided him with a diet that accommodates his religious beliefs. Doc. 13-1 at 3-4. Although

6

Carter provides no details as to what diet his religion requires, he claims that his "strict Satanic religious diet is . . . ignored and discriminated against." Id. at 3. While Carter will have to show that there is such a thing as a "strict Satanic religious diet" and what it is as well as a genuinely held religious belief, Carter very narrowly alleges facts sufficient to state a First Amendment free exercise claim. Carter's First Amendment free exercise claim against Summit and Aramark in their individual capacities and in their official capacities for injunctive relief survives § 1915A screening.

### (2)    First Amendment Establishment Clause Claim

Carter claims that Summit and Aramark have violated his rights under the First Amendment Establishment Clause. Doc. 13-1 at 2. "[A]t a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise[.]" Lee v. Weisman, 505 U.S. 577, 587 (1992) (citing Lynch v. Donnelly, 465 U.S. 668, 678 (1984)). In order to have standing to bring an Establishment Clause claim, a plaintiff may either have standing as a taxpayer or establish "an injury of direct and unwelcome personal contact with the alleged establishment of religion." Patel, 515 F.3d at 816 (citations and internal quotation omitted). "Prisoners may establish an injury if they 'allege they altered their behavior and had direct, offensive, and alienating contact with' a government-funded religious program." Id. at 817 (quoting Ams. United for Separation of Church & State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 419 (8th Cir. 2007)).

In Patel, the prisoner plaintiff alleged that the defendants only provided a religious diet to Jewish inmates. Id. The United States Court of Appeals for the Eighth Circuit found that because the plaintiff sought accommodations for his own religious beliefs, he could not bring an Establishment Clause claim, as "[a] successful Establishment Clause claim would strike down any

accommodation of religious beliefs in the prison's meal plans, which would effectively eviscerate the remedy [the plaintiff] seeks in his complaint." Id. Similarly, Carter seeks accommodation of his own religious beliefs, rather than asking this Court to bar Summit and Aramark from providing religious accommodations. See Doc. 13-1 at 3-4. Thus, Carter's First Amendment Establishment Clause claim is dismissed under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (3)    Religious Freedom Restoration Act Claim

Carter claims that Summit and Aramark have violated the Religious Freedom Restoration Act (RFRA). Id. at 2. The Supreme Court has ruled that application of RFRA to state defendants is unconstitutional. See Holt v. Hobbs, 574 U.S. 352, 357 (2015) (citing City of Boerne v. Flores, 521 U.S. 507, 532-36 (1997)); see also Olsen v. Mukasey, 541 F.3d 827, 830 (8th Cir. 2008) ("Application of RFRA to the states is unconstitutional." (citations omitted)). Summit and Aramark have contracted with the state to provide food services to State Penitentiary inmates and are state defendants for purposes of screening. See Doc. 13-1 at 2. Thus, Carter's RFRA claim is dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (4)    Religious Land Use for Incarcerated Persons Act Claim

Carter asserts that Summit and Aramark have violated the Religious Land Use for Incarcerated Persons Act (RLUIPA). Id. at 2. "RLUIPA protects 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.' " Holt, 574 U.S. at 360 (quoting 42 U.S.C. § 2000cc-5(7)(A)). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation," and the prisoner must show that the prison policy substantially burdens the prisoner's exercise of religion. Id. at 360-61.

To establish a prima facie case under RLUIPA, a plaintiff must show "1) that he engaged in a religious exercise; and 2) that the religious exercise was substantially burdened." Smith v.

8

Allen, 502 F.3d 1255, 1276 (11th Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011); see also 42 U.S.C. § 2000cc-1(a). If the plaintiff succeeds in making a prima facie showing, the defendant bears the burden to prove that the challenged regulation is the least restrictive means of furthering a compelling governmental interest.   Allen, 502 F.3d at 1276 (citations omitted). Here, Carter alleges that Summit and Aramark have failed to provide him a religious diet. Doc. 13-1 at 3-4. Thus, he alleges that his religious exercise has been substantially burdened. Carter's RLUIPA claim against Summit and Aramark in their individual capacities and in their official capacities for injunctive relief survives § 1915A screening.

### (5)    Religious Discrimination Claim

Carter claims that Summit and Aramark have discriminated against him on the basis of religion. Id. at 2. Construing his complaint liberally, Carter brings a claim for violation of his Fourteenth Amendment right to equal protection of the laws. Id. at 2-4.

The Equal Protection Clause of the Fourteenth Amendment requires the government to "treat similarly situated people alike," a protection that applies to prisoners. Murphy, 372 F.3d at 984 (quoting Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999)). The Eighth Circuit has explained that for a prisoner to prevail on an equal protection claim, he "must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." Patel, 515 F.3d at 815 (citations and internal quotation omitted). "Religion is a suspect classification." Id. at 816 (citing Weems v. Little Rock Police Dep't, 453 F.3d 1010, 1016 (8th Cir. 2006)).

Here, Carter alleges that Summit and Aramark have treated him differently than similarly situated inmates of other religions. Doc. 13-1 at 3-4. Specifically, he alleges that inmates of other religions, such as Jewish and Muslim inmates, receive religious diets, but he is not provided a

9

religious diet. Id. While Carter will have to show that there is such a thing as a "strict Satanic religious diet" and what it is as well as a genuinely held religious belief, Carter's Fourteenth Amendment equal protection claim against Summit and Aramark in their individual capacities and in their official capacities for injunctive relief narrowly survives § 1915A screening.

### (6)     First Amendment Freedom of Speech and Retaliation Claims

This Court construed Carter's initial complaint as bringing First Amendment freedom of speech and retaliation claims against several defendants. Doc. 11 at 11-14. Specifically, Carter alleged that his right to receive mail was violated by the State Penitentiary's rejection of a religious book and that he was placed in the Segregated Housing Unit in retaliation for his filing of grievances and his attempts to practice his religion. See Doc. 1 at 3, 9-11, 13; Doc. 1-1 at 11. Carter makes no allegations that Summit or Aramark participated in these actions or otherwise violated his free speech rights or his right to be free from retaliation. See Doc. 13-1 at 3-4. Thus, to the extent that Carter brings First Amendment freedom of speech and First Amendment retaliation claims against Summit and Aramark, these claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2.     Carter's Previous Claims Against Existing Defendants Regarding Prison Diet Offerings

Carter's First Amendment free exercise claim, his RLUIPA claim, his First Amendment right to receive mail claim, his Fourteenth Amendment equal protection claim, and his First Amendment retaliation claim survived this Court's initial screening.[2]   Doc. 11 at 15-16. Construing his complaint liberally, Carter seeks to bring these claims against Wasko, Sullivan,

---

[2] Specifically, claims brought against certain individual defendants in their individual capacities survived screening, and these claims brought against all individual defendants in their official capacities for injunctive relief survived screening. Doc. 11 at 15-16.

10

Cook, Yost, Mousel, and Mertens-Jones in their individual capacities and in their official capacities for injunctive relief for the lack of a religious diet at the State Penitentiary.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

Parrish v. Ball, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Carter's individual capacity claims against individual defendants must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See id.

As discussed above, Carter alleges facts sufficient to state a claim for violation of his First Amendment free exercise rights, his Fourteenth Amendment equal protection rights, and RLUIPA. See Doc. 13-1 at 3-4. The lack of a religious diet does not implicate Carter's First Amendment right to receive mail or his First Amendment right to be free from retaliation. See id. Under Parrish, Carter's individual capacity claims against individual defendants must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. See 594 F.3d at 1001. Carter makes no allegations that Wasko, Sullivan, Cook, Yost, Mousel, and Mertens-Jones participated in his not being provided a religious diet or that their failure to train or supervise caused the lack of a religious diet. See Doc. 1 at 7-12; Doc. 13-1 at 3-4.

11

Thus, Carter's First Amendment free exercise claim, his Fourteenth Amendment equal protection claim, and his RLUIPA claim for religious discrimination in prison diet offerings against Wasko, Sullivan, Cook, Yost, Mousel, and Mertens-Jones in their individual capacities are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). Carter's First Amendment free exercise claim, his Fourteenth Amendment equal protection claim, and his RLUIPA claim for religious discrimination in prison diet offerings against Wasko, Sullivan, Cook, Yost, Mousel, and Mertens-Jones in their official capacities for injunctive relief survive § 1915A screening.

### 3.    Carter's New Claims Against All Defendants

#### a.    Official Capacity Claims for Money Damages

As discussed above, money damages are not available for claims against state defendants in their official capacities. See Will, 491 U.S. at 66. All defendants are either state employees or private entities that have contracted with the state. Doc. 1 at 2-5; Doc. 13-1 at 2. The State of South Dakota has not waived its sovereign immunity. Thus, to the extent that Carter seeks to bring new claims against defendants in their official capacities for money damages, those claims are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

#### b.    Individual Capacity Claims and Official Capacity Claims for Injunctive Relief

Again, to bring individual capacity claims against individual defendants, Carter must allege that each individual defendant either participated in the deprivation or caused it to occur through a failure to train or supervise. See Parrish, 594 F.3d 1001. Carter's claims against Summit and Aramark must show that an actionable injury was caused by a "policy, custom, or official action" of the corporate defendant. See Hamilton, 452 F.3d at 973 (citing Sanders, 984 F.2d at 975-76).

##### (1)    Eighth Amendment Claim

12

Carter alleges that the conditions of his confinement violate his Eighth Amendment right to be free from cruel and unusual punishment. Doc. 13-1 at 2. "[T]he Constitution 'does not mandate comfortable prisons'; it prohibits 'inhumane ones.' " Williams v. Delo, 49 F.3d 442, 445 (8th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). The Supreme Court has clarified that only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson v. McMillian, 503 U.S. 1, 9 (1992) (internal quotation omitted). The Supreme Court has listed as basic human needs "food, clothing, shelter, medical care, and reasonable safety[.]" Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation omitted).

In order to prevail on an Eighth Amendment conditions of confinement claim, a prisoner must prove that (1) objectively, the deprivation was "sufficiently serious" to deprive him of "the minimal civilized measures of life's necessities" or to constitute "a substantial risk of serious harm" to his health or safety; and (2) subjectively, the defendants were deliberately indifferent to the risk of harm posed by the deprivation. Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (quoting Farmer, 511 U.S. at 834). An Eighth Amendment challenge to conditions of confinement requires examining the totality of the circumstances. Villanueva v. George, 659 F.2d 851, 854 (8th Cir. 1981) (en banc). Even if no single condition would be unconstitutional in itself, the cumulative effect of prison conditions may subject inmates to cruel and unusual punishment. See id.; see also Tyler v. Black, 865 F.2d 181, 183 (8th Cir. 1989).

The Eighth Amendment's prohibition against cruel and unusual punishment require prisoners to be provided with nutritionally adequate meals to maintain health. See Cody v. CBM Corr. Food Servs., 250 F. App'x 763, 765 (8th Cir. 2007) (per curiam) (citing Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992); see also Jones v. Allen, 2007 WL 2725218, at *4,

2007 U.S. Dist. LEXIS 105014, at *9 (W.D. Ark. Aug. 21, 2007) ("Merely because the food is not prepared to an inmate's taste or the fact that an inmate would prefer other foods does not implicate the Constitution. Rather, the Constitution is only violated if the food provided is inadequate to maintain good health."). In Wishon, the Eighth Circuit held that prisoners have a right to adequate nutrition and that the failure to provide adequate nutrition may qualify as a deliberate indifference that violates the Eighth Amendment. 978 F.2d at 449. A prisoner making a deliberate indifference claim for failure to provide adequate nutrition must show that "the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." Id. Further, it is "clearly established that a prisoner may properly allege a constitutional violation by demonstrating significant weight loss or other adverse physical effects from lack of nutrition." Ingrassia v. Schafer, 825 F.3d 891, 899 (8th Cir. 2016); see also Davis v. Missouri, 389 F. App'x. 579, 579 (8th Cir. 2010) (per curiam) (citing cases for the proposition that "inmate claiming inadequate diet under Eighth Amendment must allege he lost weight or suffered adverse physical effects, or was denied nutritionally or calorically adequate diet" (citations omitted)).

Here, Carter fails to state a claim for violation of his Eighth Amendment right to be free from cruel and unusual punishment. Although his claim must be evaluated in light of the totality of the circumstances, the sole deprivation of a basic need alleged by Carter is that the food served has been inadequate.[3] See Doc. 1 at 7-12; Doc. 13-1 at 3-4. Carter states that he has been "forced

---

[3] In a letter to the Court written after his initial complaint but before his amended complaint, Carter alleges that he has suffered deprivations "almost identical" to those alleged by another inmate in a separate case. Doc. 8 at 1 (citing Shaw v. Wasko, 4:22-CV-04054-KES). One of the deprivations Carter alleges in this letter is that he has had issues "[w]ith [m]edical[.]" Id. Other than this one statement, Carter alleges no facts regarding his medical treatment. See id. Thus, to the extent that Carter seeks to bring an Eighth Amendment claim for deliberate indifference to serious medical

14

to eat 'dog slop' instead of what is pleasing to [his] God" but makes no other statements about the quality or nutrition of the food served at the State Penitentiary. See Doc. 13-1 at 3-4. He claims that he has "suffer[ed] physically . . . from disgracing [his] God" by not eating a religious diet. Id. But he alleges that this harm stems from his inability to practice his religion, not from the quality or nutrition of the food. See id. Thus, although he alleges his health has suffered, he does not allege that it has suffered "as a result of the food" as required by Wishon. See id.; 978 F.2d at 449. Carter's Eighth Amendment conditions of confinement claim is dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (2)    Fifth Amendment Due Process Claim

Carter brings a claim under the Fifth Amendment Due Process Clause. Doc. 13-1 at 2. "The [D]ue [P]rocess [C]lause of the Fifth Amendment applies only to the federal government." Truong v. Hassan, 829 F.3d 627, 631 n.4 (8th Cir. 2016). Carter only brings claims against State defendants and private defendants who have contracted with the State of South Dakota. Doc. 1 at 2-5; Doc. 13-1 at 2. Thus, his Fifth Amendment due process claim is dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (3)    Fourteenth Amendment Due Process Claim

Carter brings a claim under the Fourteenth Amendment Due Process Clause. Doc. 13-1 at 2. Carter does not explain the basis for his due process claim. See id. Construing his complaint liberally, this Court finds Carter brings a Fourteenth Amendment due process claim against Cook and Yost for rejecting his grievances. See Doc. 1 at 8-10. "While a violation of a state-created liberty interest can amount to a violation of the Constitution, not every violation of state law or

needs, that claim is dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

15

state-mandated procedures is a violation of the Constitution." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (per curiam) (holding that a refusal to process grievances alone did not state a constitutional deprivation.). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the [F]ourteenth [A]mendment." Id. (first alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also King v. Houston, 556 F. App'x 561, 563 (8th Cir. 2014) (per curiam) (explaining that, under Buckley, "prison officials' failure to process or investigate grievances, without more, is not actionable under § 1983" (citing 997 F.2d at 495)).

Here, Carter claims that Cook rejected a grievance because it did not include a form that she could have accessed and that Yost rejected a grievance and did not "intervene in the matter[.]" Doc. 1 at 9-10. These claims fail under Buckley. See 997 F.2d at 495. Thus, Carter's Fourteenth Amendment due process claim for grievance process issues is dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (4)     First Amendment Access to the Courts Claim

In his separate letter to the Court, Carter alleges that State Penitentiary officials "thr[ew] away [his] legal stuff" and "den[ied] [him] access to courts[.]" Doc. 8 at 1. Construing his complaint liberally, Carter brings a claim for violation of his First Amendment right to access the courts. See id. "The Constitution guarantees prisoners a right to access the courts." White v. Kautzky, 494 F.3d 677, 679 (8th Cir. 2007). To succeed on a claim for denial of access to the courts, a plaintiff must show that he suffered actual injury as a result of the defendants' actions. Lewis v. Casey, 518 U.S. 343, 349 (1996). In order to satisfy the actual injury requirement, a plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being

impeded." Johnson v. Missouri, 142 F.3d 1087, 1089 (8th Cir. 1998) (quoting Casey, 518 U.S. at 353).

Here, Carter fails to allege an actual injury as required by Casey. Although Carter claims that State Penitentiary officials have interfered with his legal filings, he does not identify a nonfrivolous claim that has been frustrated or impeded as required under Johnson v. Missouri. See Doc. 8 at 1; 142 F.3d at 1089 (citing Casey, 518 U.S. at 353). Indeed, Carter has effectively made multiple claims in this lawsuit. Thus, his First Amendment access to the courts claim is dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (5)     South Dakota Human Relations Act

In his separate letter to the Court, Carter expressed a desire to bring a claim under the "South Dakota Relations Act" and SDCL § 20-13-24. Doc. 8 at 1. Construing his complaint liberally, Carter brings a state-law claim under the South Dakota Human Relations Act. See id. Under 28 U.S.C. § 1367(a), this Court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action [over which this Court has original jurisdiction] that they form part of the same case or controversy[.]" Carter's South Dakota Human Relations Act claim is part of the same "case or controversy" as his First Amendment free exercise claims. Thus, this Court appears to have supplemental jurisdiction over Carter's state-law South Dakota Human Relations Act claim.

Under SDCL § 20-13-24,

[i]t is an unfair or discriminatory practice for any person engaged in the provision of public services, by reason of . . . religion, . . . to fail or refuse to provide to any person access to the use of and benefit thereof, or to provide adverse or unequal treatment to any person in connection therewith.

A person "claiming to be aggrieved by a discriminatory or unfair practice may file [a charge] with the Division of Human Rights[.]" SDCL § 20-13-29. The Supreme Court of South Dakota has

held that "administrative exhaustion with the Division is required with all claims that fall within its jurisdiction." <u>Landman v. Kaemingk</u>, 2020 WL 3608288, at *2, 2020 U.S. Dist. LEXIS 116598, at *5 (D.S.D. July 2, 2020) (quoting <u>O'Brien v. W. Dakota Tech. Inst.</u>, 670 N.W.2d 924, 928 (S.D. 2003)). Further, "[f]ailure to exhaust administrative remedies where required is a jurisdictional defect." <u>Id.</u> (alteration in original) (quoting <u>S.D. Bd. of Regents v. Heege</u>, 428 N.W.2d 535, 539 (S.D. 1988)).

Here, Carter makes no claim that he has exhausted his administrative remedies with the Division of Human Rights. <u>See</u> Doc. 8 at 1. <u>Landman</u> rejected the plaintiff's argument that South Dakota Human Relations Act claims did not need to be "exhaust[ed] administratively within the state beyond DOC exhaustion." 2020 WL 3608288, at *2, 2020 U.S. Dist. LEXIS 116598, at *5 (internal quotation omitted). Thus, while Carter may have attempted to exhaust his claim within the DOC through the prison grievance process, he must bring his South Dakota Human Relations Act claim before the Division of Human Rights. <u>See id.</u> Thus, Carter's South Dakota Human Relations Act claim is dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### (6) Remaining Claims

Carter alleges unspecified "Fourteenth Amendment violations[,]" violation of the Prison Litigation Reform Act, and violations of his "[r]ight to be free from abuse of discretion on part of prison administration, [p]rotection from unconstitutional administrative action, [and] [p]rotection of a prisoner's life and health from administration." Doc. 13-1 at 2. Carter provides no factual allegations to support these claims. Thus, these allegations are not "enough to raise a right to relief above the speculative level" as required by <u>Twombly</u>. 550 U.S. at 555. Carter's remaining claims are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

18

## II.    Motion to Appoint Counsel

Carter has filed a motion for appointment of counsel. Doc. 25. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998). In determining whether to appoint counsel to a pro se litigant, this Court considers the complexity of the case, the ability of the litigant to investigate the facts, the existence of conflicting testimony, and the litigant's ability to present his claims. Id. At this time, Carter's claims do not appear to be complex, and he is able to investigate the facts and present his claims adequately. This Court believes that Carter is capable of pursuing his claims pro se at this phase of litigation, and his motion for appointment of counsel, Doc. 25, is denied at this time.

## III.    Order

Accordingly, it is

ORDERED that Carter's motion to amend complaint, Doc. 13, is granted. It is further

ORDERED that Carter's claims against Summit Food Services and Aramark Correctional Services in their official capacities for money damages and Carter's new claims against Wasko, Sullivan, Cook, Yost, Mousel, and Mertens-Jones in their official capacities for money damages are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(iii) and 1915A(b)(2). It is further

ORDERED that Carter's First Amendment free exercise claim for prison diet offerings against Summit Food Services and Aramark Correctional Services in their individual capacities and in their official capacities for injunctive relief and against Wasko, Sullivan, Cook, Yost, Mousel, and Mertens-Jones in their official capacities for injunctive relief only survives § 1915A screening. It is further

ORDERED that Carter's RLUIPA claim for prison diet offerings against Summit Food Services and Aramark Correctional Services in their individual capacities and in their official capacities for injunctive relief and against Wasko, Sullivan, Cook, Yost, Mousel, and Mertens-Jones in their official capacities for injunctive relief only survives § 1915A screening. It is further

ORDERED that Carter's Fourteenth Amendment equal protection claim for religious discrimination in prison diet offerings against Summit Food Services and Aramark Correctional Services in their individual capacities and in their official capacities for injunctive relief and against Wasko, Sullivan, Cook, Yost, Mousel, and Mertens-Jones in their official capacities for injunctive relief only survives § 1915A screening. It is further

ORDERED that Carter's First Amendment Establishment Clause claim and his RFRA claim against Summit Food Services and Aramark Correctional Services are dismissed under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Carter's remaining claims in his amended complaint against all defendants are dismissed without prejudice under 28 U.S.C §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Carter's motion for appointment of counsel, Doc. 25, is denied. It is further

ORDERED that the Clerk shall send blank summons forms and United States Marshals Service Form (Form USM-285) to Carter so that he may complete the form to cause the complaint to be served upon defendants Summit Food Services and Aramark Correctional Services. It is further

ORDERED that Carter shall complete and send the Clerk of Court a separate summons and USM-285 form for defendants Summit Food Services and Aramark Correctional Services. Upon receipt of the completed summons and USM-285 forms, the Clerk of Court will issue the

summons.  If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.  It is further

ORDERED that the United States Marshals Service shall serve the completed summonses, together with a copy of the initial complaint, Doc. 1, the supplement attached to the initial complaint containing additional allegations, Doc. 1-1, the amended complaint, Doc. 13-1, the supplement containing an additional page of the amended complaint, Doc. 18, and this order upon defendants Summit Food Services, Aramark Correctional Services, Wasko, Sullivan, Cook, Yost, Mousel, and Mertens-Jones.  It is further

ORDERED that the defendants will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendant falls under Fed. R. Civ. P. 12(a)(2) or (3).  It is finally

ORDERED that Carter will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Civil Local Rules while this case is pending.

DATED January 18th, 2023.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE

21