UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW CARTER,<br><br>Plaintiff,<br><br>vs.<br><br>KELLIE WASKO, SECRETARY OF CORRECTIONS, OFFICIAL CAPACITY; AMBER PIRRAGLIA, ACTING WARDEN, OFFICIAL CAPACITY; SAMUEL YOST, UNIT COORDINATOR, OFFICIAL CAPACITY; CRAIG MOUSEL, MAIL ROOM CLERK, OFFICIAL CAPACITY; TAMMY MERTENS-JONES, CULTURAL SPIRITUAL ACTIVITIES COORDINATOR, OFFICIAL CAPACITY; ARAMARK CORRECTIONAL SERVICES, LLC, IN ITS INDIVIDUAL AND OFFICIAL CAPACITIES; AND MARLIN'S INC., d/b/a CBM MANAGEMENT d/b/a SUMMIT FOOD SERVICES, IN ITS INDIVIDUAL AND OFFICIAL CAPACITIES;<br><br>Defendants. | 4:22-CV-04103-RAL<br><br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART ARAMARK CORRECTIONAL SERVICES, LLC'S MOTION TO DISMISS, DENYING PLAINTIFF'S MOTIONS FOR PRELIMINARY INJUNCTION, AND ORDER TO SHOW CAUSE |

Plaintiff Matthew Carter filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Carter leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Doc. 6. After Carter timely paid his initial filing fee, this Court screened Carter's complaint under 28 U.S.C. § 1915A, dismissing the complaint in part and directing service upon defendants in part. Doc. 11. This Court granted Carter's motion to amend his complaint to add new defendants and to bring additional claims against existing defendants. Doc. 26 at 2. This Court then screened Carter's additional claims under 28 U.S.C. § 1915A. Id. at 2–18. Carter's First Amendment free

exercise claim for prison diet offerings, his RLUIPA claim for prison diet offerings, and his Fourteenth Amendment equal protection claim for religious discrimination in prison diet offerings against Aramark Correctional Services LLC ("Aramark") survived § 1915A screening. Id. at 6–10, 19–20. Aramark moves to dismiss Carter's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which can be granted. Doc. 86. Carter did not respond to Aramark's motion to dismiss.

For the second time in this case, Carter has filed a series of motions requesting immediate injunctive relief based on conclusory allegations, unsupported by any record evidence, that he has been "kidnapped" and is being "tortured" while being held in the Special Housing Unit ("S.H.U.") for reasons unknown to him.[1] See Docs. 120, 133, 137. The Department of Corrections Defendants[2] (collectively "DOC Defendants") oppose Carter's motions. See Docs. 124, 125, 126, 138, 139. The DOC Defendants move for Rule 11 Sanctions against Carter because of Carter's continued abuse of the judicial system. See Doc. 140.

## I.      Aramark's Motion to Dismiss

### A.      Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint. Neitzke v. Williams, 490 U.S. 319, 326–27 (1989). When considering a Rule 12(b)(6) motion, the facts alleged in the complaint must be considered true, and all inferences must be drawn in favor of Carter, the nonmoving party. Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (citing Stone Motor Co. v. Gen. Motors

---

[1] Carter's initial series of motions are Docs. 28, 38. This Court denied Carter's motions. See Docs. 40, 47.
[2] Kellie Wasko, Secretary of Corrections; Amber Pirraglia, Acting Warden of the SDSP; Samuel Yost, Unit Coordinator; Craig Mousel, Mail Room Clerk; and Tammy Mertens-Jones, Cultural Spiritual Activities Coordinator.

Corp., 293 F.3d 456, 465 (8th Cir. 2002)). To survive a motion to dismiss, the complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To meet the plausibility standard, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). But "if as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' . . . a claim must be dismissed[.]" Neitzke, 490 U.S at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### B.    Legal Analysis and Discussion

#### 1.    Carter's Allegations Against Aramark

Carter alleges that Aramark became the food provider at the South Dakota State Penitentiary ("SDSP") on October 1, 2022. Doc. 27 at 3. He claims that Aramark has failed to accommodate his needs for a religious diet. Id. at 3–4. Carter professes to be a Satanist, and he alleges that the SDSP provides religious diets for followers of several other religions, but not for him. Id. at 3. According to Carter, the failure to provide a religious diet has caused him physical, emotional, spiritual, and psychological pain. Id. at 4. He claims that he has been forced to eat "dog slop" instead of what pleases his deity. Id. He contends that Aramark has discriminated against him because of his strongly held religious beliefs while acting under color of state law. Id. Carter requests "to be allowed the Satanic diet of [his] chosing [sic] that is pleasing to [his] God." Doc. 18 at 1.

#### 2.    Section 1983 Claims

A corporate entity is "liable under § 1983 only when the entity itself is a 'moving force' behind the violation. That is, the entity's official 'policy or custom' must have 'caused' the

constitutional violation . . . ." <u>Clay v. Conlee</u>, 815 F.2d 1164, 1170 (8th Cir. 1987). Aramark argues that "Carter has failed to plead the necessary requirements of a <u>Monell</u> claim as to Aramark[.]" Doc. 87 at 3.

A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." <u>Crumpley-Patterson v. Trinity Lutheran Hosp.</u>, 388 F.3d 588, 591 (8th Cir. 2004) (citing <u>Doe ex rel. Doe v. Sch. Dist.</u>, 340 F.3d 605, 614 (8th Cir. 2003)). To establish corporate liability premised on an unofficial custom rather than a policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the [corporate] entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the [corporate] entity's policymaking officials after notice to the officials of that misconduct[.]" <u>Brewington v. Keener</u>, 902 F.3d 796, 801 (8th Cir. 2018) (quoting <u>Corwin v. City of Indep.</u>, 829 F.3d 695, 700 (8th Cir. 2016)). If the complaint includes some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom, then the <u>Monell</u> liability claims will survive a motion to dismiss. <u>Crumpley-Patterson</u>, 388 F.3d at 591; <u>see also Doe</u>, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Carter's amended complaint does not allege the existence of an unconstitutional Aramark policy. <u>See generally</u> Doc. 27. Giving Carter the benefit of all reasonable inferences, his amended complaint alleges that since October 1, 2022, Aramark has ignored his religious views and strict Satanic religious diet and not provided a diet that pleases his deity. Doc. 27 at 4. These allegations are sufficient, at the motion to dismiss stage, to allege a continuing, widespread pattern of unconstitutional conduct by Aramark's employees. But Carter does not allege any facts that would

support a finding that Aramark's policymaking officials are on notice of the alleged unconstitutional conduct. See generally Doc. 27. Thus, Carter has not pleaded sufficient facts, which if true, establish an unconstitutional custom. Aramark's motion to dismiss Carter's § 1983 claims is granted.[3]

### 3.    RLUIPA Claim

The Religious Land Use and Institutionalized Persons Act ("RLUIPA") creates an express private right of action. "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). While a "government" can be sued under RLUIPA, RLUIPA defines "government" broadly to include not only state and local governments, but also their, agencies, officials and other acting under color of state or federal law. Id. § 2000cc-5(4). In Murphy v. Missouri Department of Corrections, 372 F.3d 979, 983 (8th Cir. 2004), the United States Court of Appeals for the Eighth Circuit recognized that RLUIPA is an "independent statutory claim . . . subject to review under a different standard[]" than a § 1983 claim alleging violation of one or more constitutional rights.

Aramark does not address whether RLUIPA authorizes respondeat superior liability. See generally Doc. 87. Rather Aramark argues only that Carter's claims should be dismissed because he has not alleged sufficient facts to establish Monell liability under § 1983. The United States Court of Appeals for the Eighth Circuit has not considered this issue, see Barnett v. Short, 2025 WL 611811, at *4 (8th Cir. Feb. 26, 2025), but some district courts have found that a governmental

---

[3] Aramark also moves to dismiss Carter's amended complaint on the grounds that Carter has not exhausted the available administrative remedies. Doc. 87 at 7–9. "[F]ailure to exhaust is an affirmative defense under the PLRA [Prison Litigation Reform Act], and . . . inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007). Accordingly, this Court rejects Aramark's alternative argument that its motion to dismiss should be granted because Carter has not exhausted his available administrative remedies.

entity can be vicariously liable under RLUIPA.  One court reasoned that "[i]n speaking of liable parties as 'governments' rather than as 'persons,' RLUIPA appear implicitly to authorize respondeat superior liability against municipalities[.]"  Agrawal v. Briley, 2004 WL 1977581, at *14 (N.D. Ill. Aug. 25, 2004), overruled on other grounds by Sossamon v. Texas, 563 U.S. 277 (2011).  See also Laymon Lessons, Inc. v. City of Millersville, 636 F. Supp. 2d 620, 643 (M.D. Tenn. 2008) (stating that a municipality can be vicariously liable under RLUIPA as opposed to § 1983).  Because Aramark has not argued nor cited any authority holding that RLUIPA does not authorize vicarious liability, Aramark's motion to dismiss Carter's RLUIPA claim is denied.

## II.   Carter's Motions for Preliminary Injunction

### A.   Procedural Background

After considering Carter's motions for a trial date, Docs. 52, 53, 54, and 58, this Court entered a Rule 16 Scheduling Order requiring that all motions, other than motions in limine, shall be filed and served on or before August 1, 2024.  Doc. 77 ¶ 4.  The DOC Defendants and Summit Food Service, LLC have moved for summary judgment.  See Docs. 101, 113.  Pursuant to this Court's Rule 16 Scheduling Order, Carter's responsive pleadings should have been filed and served on or before August 22, 2024.  Docket 77 ¶ 4.  To date, Carter has not responded to the defendants' motions for summary judgment.

Initially Carter requested and this Court grant his motion for a 45-day extension of time to respond to the defendants' motions for summary judgment.  See Docs. 116, 117.  Carter then requested a second extension of time alleging that he has "NOTHING and no access to anything." Doc. 118.  Carter's motion suggested that he had been placed in the S.H.U., so this Court extended Carter's time to respond to defendants' motions for summary judgment for an additional thirty days, up to and including October 9, 2024.  Doc. 119 at 2.  This Court sua sponte extended Carter's

time to respond to defendants' motion for summary judgement up to an including October 30, 2024, because of a lockdown at the SDSP. Doc. 123 at 2. When Carter moved for a further extension of time, Doc. 131, this Court granted in part Carter's motion and extended his time to respond to defendants' motions for summary judgment up to and including November 4, 2024. Doc. 136 at 3. The order states that "[a]bsent extraordinary circumstances, no further extensions of time will be granted." Id.

Carter has not filed any further requests for extensions of time, but he has submitted a "Brief Explaining Why I Haven't Been Able to Respond or Comply[,]" that is dated November 19, 2024. Doc. 143 (capitalization in original omitted). Carter's brief asserts that he "has not been able to do virtually anything . . . for approximately 2 weeks now because the S.H.U. (Solitary Confinement) tablet has not worked as all." Id. By letter dated January 22, 2025, Carter informed the Court that he was out of the S.H.U. Doc. 147. Carter's January 22, 2025 correspondence thanks the Court for "bearing with [him]." Id. Carter's time for responding to defendants' motions for summary judgment, which this Court extended numerous times, expired on November 4, 2024, and this Court specifically instructed Carter that no further extensions would be granted absent extraordinary circumstances. Doc. 136 at 3. As discussed below, there is no record evidence of extraordinary circumstances.

After this Court granted Carter's second motion for extension of time, Carter filed three motions for a temporary restraining order. See Docs. 120, 133, 137. Carter asserts that he is being held in the S.H.U. and "tortured" with no access to a phone, legal mail, law library, pen, or paper. Doc. 120 at 1; Doc. 133 at 1; Doc. 137 at 1, 3. Carter further asserts that he is being held in the S.H.U. so that he cannot respond to defendants' motions for summary judgment. Doc. 120 at 1; Doc. 137 at 1. In two of his motions, Carter does not request any specific relief, see Docs. 120,

137, but in one motion he requests that this Court "force the Defendants to allow [him] access to the LAW LIBRARY so [he] can answer their MOTIONS." Doc. 133 at 1. He also requests that "the United States Marshall [sic] Service pick [him] up and house [him] in a Federal Medical Facility[]" away from the sexual abuse and torture he alleges that he has had to endure at the SDSP. Id.

After Carter filed his first motion for a temporary restraining order, this Court requested that the DOC Defendants respond to Carter's allegations that he has been unable to access this Court and to respond to Defendants' motions for summary judgment because of his conditions of confinement. Doc. 121 at 2.[4] The DOC Defendants responded to Carter's first motion for temporary restraining order, see Docs. 124, 125, and 126, and submitted a memorandum and affidavit in opposition to Carter's third motion for restraining order to respond to the assertions that were not duplicative of the allegations Carter relied on in support of his first two motions, see Docs. 138, 139.

**B.    Legal Standard**

A temporary restraining order is issued only in the extremely rare instance in which court action must be taken without notice to the nonmoving party. Fed. R. Civ. P. 65(b). Because the DOC Defendants were provided notice and filed responses, Carter's motions are construed as requests for a preliminary injunction. See Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party.").

A preliminary injunction is an "extraordinary and drastic remedy[.]" Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (citation omitted). Carter, the party seeking preliminary relief, bears the

---

[4] The Court also stated that Carter's motion should be construed as a Rule 65(a) motion for preliminary injunction "to require certain of the Defendants to provide him the wherewithal while in the Special Housing Unit of SDSP to essentially access the courts." Doc. 121 at 2.

burden of establishing the elements necessary for relief. Watkins, Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). Whether a preliminary injunction should issue is decided by weighing the four Dataphase factors: (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on the other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981). In a prison setting, a request for a preliminary injunction "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" Goff v. Harper, 60 F.3d 518, 520 (8th Cir. 1995) (quoting Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1982)).

### C.   Legal Analysis and Discussion

#### 1.   Carter's Placement in Restrictive Housing

Carter asserts that he is "locked away in the S.H.U. (Solitary Confinement) for no apparent reason[.]" Doc. 141 at 7; see also Doc. 137 at 3 (alleging that he is "being held kidnapped on NO write-ups, IP, PC, etc."). According to Carter, he a filed PREA [Prison Rape Elimination Act] complaint against another inmate . . . "[a]nd somehow [he] ended up in the S.H.U.? It's because the Defendant's [sic] are preventing [him] from being able to access this Court." Doc. 120 at 1–2. The Special Investigations Unit ("SIU") at the SDSP investigated Carter's PREA complaint and determined that Carter's allegations were unsubstantiated. Doc. 125 ¶¶ 5–16. During the same period that the SIU was investigating Carter's PREA complaint, the SIU was also investigating a PREA complaint another inmate had lodged against Carter. Id. ¶¶ 17–19. Based on camera footage and statements from witnesses, the PREA allegations against Carter were substantiated. Id. ¶¶ 19–25. Because of the substantiated PREA allegation, Carter was written up

9

on an L-50 charge for sexual harassment. Id. ¶ 26; Doc. 124-6. None of Carter's filings mention the L-50 charge that led to his confinement in Restrictive Housing. Further, although Carter asserts that he has been kidnapped and is being held in the S.H.U for no apparent reason, Carter's filings fail to mention that he refused to leave Restrictive Housing after the major write up. Doc. 138-1. Staff made attempts to place him in East Hall, but Carter refused to leave Restrictive Housing.[5] Doc. 139 ¶ 5. After Carter's repeated refusal to return to East Hall, staff offered Carter a housing assignment in Federal Hall where he was requesting to be housed. Id. ¶ 15; Doc. 138-1. But Carter again refused to leave Restrictive Housing because he "did not feel the door of that particular cell was strong enough and could easily be broken into." Doc. 139 ¶ 15 (quoting Doc. 138-1).

Carter references assaults by other inmates and contends that he should be placed in protective custody. Doc. 130 at 4–6; Doc. 134 at 2–3; Doc. 137 at 1. But "multiple PC Boards have denied placement and recommended he go back to East Hall." Doc. 138-1. On October 24, 2024, another PC hearing was held after an altercation on October 22, 2024. Id. During the hearing, Carter asserted that prison staff "got him jumped" and requested to be housed alone in a specific area. Id. Again, Carter's request for protective custody was denied. Id. Carter allegations regarding the October 22, 2024 incident are unfounded. Carter alleges that prison staff paid another inmate to assault Carter with a padlock. See Doc. 137 at 1. After the altercation, prison staff determined that Carter had instigated the altercation. Doc. 139 ¶¶ 10–12. Further, a review of video evidence and staff reports did not corroborate Carter's allegations that a weapon had been used. Id. ¶ 14; Doc. 138-3. Carter's allegations that prison staff had paid another inmate to assault

---

[5] The record demonstrates that Carter's continued placement in Restrictive Housing after September 12, 2024, is due to his refusal to return to East Hall. Doc. 126 ¶¶ 17–19.

him were also unsubstantiated. Doc. 139 ¶ 12.[6] Carter has not met his burden of establishing that his placement in Restrictive Housing was retaliatory or an effort to preclude him from responding to defendants' motions for summary judgment.

### 2.    Access to Pen, Paper, Legal Materials, and Legal Research

Similarly, Carter has not met his burden of establishing that he has been denied access to pen, paper, legal materials, and legal research while in Restrictive Housing. The DOC's Restrictive Housing policy, policy number 300-19, provides that "[o]ffenders in restrictive housing are provided suitable clothing, and access to basic personal items for use in their cells unless there is imminent danger that an offender or any other offender(s) will destroy an item or induce self-injury." Doc. 124-1 at 3 (italics in original omitted). "[B]asic personal items" include pen and paper. Doc. 126 ¶ 5. During his time in Restrictive Housing, Carter has made multiple requests for envelopes, paper, and pens. Id. ¶ 6. Prison staff has fulfilled his requests, although in some cases not as promptly as Carter may have liked. Id. A review of the docket entries in this case confirms that Carter has been provided pen and paper, as he has filed multiple letters, motions, and other documents during the time period in which he alleges that he has had no access to anything. See, e.g., Docs. 116, 118, 127, 129, 134, 135, 141, and 143. A review of the outgoing legal mail

---

[6] Prison staff has determined that Carter "continues to try and manipulate his housing status and clearly attempts to use all means necessary to achieve his objective of being place in protective custody." Doc. 139 ¶ 6. The record supports this determination. The October 22, 2024 altercation is not the first time that Carter has instigated an altercation with another inmate and then contended that he was brutally assaulted and is entitled to preliminary injunctive relief. Carter made similar allegations regarding a June 5, 2023 altercation. Doc. 38 at 2. When the Court denied Carter's motion for preliminary injunction, the Court outlined that record evidence that controverted Carter's unsupported factual allegations and warned Carter that if he files further pleadings or motions seeking affirmative relief that contain factual assertions that have no evidentiary support and are contracted by the record, the Court will consider Rule 11 sanctions. Doc. 47 at 6, 16.

log reveals that Carter deposited for mailing twelve pieces of legal correspondence between August 8, 2024 and September 11, 2024, when he alleges he had no paper or pen.

The Restrictive Housing policy also provides that "[o]ffenders in restrictive housing will have access to legal materials. . . . Offenders in restrictive housing will be allowed access to the legal database by submitting request to the unit manager." Doc. 124-1 at 5 (italics in original omitted). Carter mailed a "Brief Explaining Why I Haven't Been Able To Respond or Comply," which is dated November 19, 2024. Doc. 143 (capitalization in original omitted). Carter alleges that he has "absolutely NO paper or notepads whatsoever[,]" no access to the law library, or any of his "LEGAL documents, mail, folders, notepads, folders, etc." Id. at 1. On October 31, 2024, prison staff checked Carter's cell and noted that it looked like an office. Doc. 139 ¶ 20. Captain Jarod Hettich has communicated with the property office multiple times in an attempt to locate items Carter alleges were missing or deliberately kept from him. Id. ¶ 21. At the direction of the property office, multiple searches have been conducted, and it has been determined that all of Carter's property has been provided to him. Id.

During this time period when Carter alleges he was being tortured in the S.H.U. with no access to a law library, pen, paper, or his legal documents, he was able to prepare and file on November 7, 2024, a 36-page typed petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 along with more than 600 pages of supporting exhibits. Carter v. South Dakota, 4:24-CV-04208-RAL, Doc. 1; Doc. 1-1; Doc. 1-2; Doc. 1-3 (D.S.D.). On November 18, 2024, Carter mailed his response to the Magistrate Judge's Order to Show Cause. Id. at Doc. 9; Doc. 9-1. Carter's response quotes South Dakota statutes and includes copies of some of the pleadings in his state habeas proceeding. Id. at Doc. 9; Doc. 9-1. Although Carter alleges that he has no access to any

of his legal papers, recently he filed in support of his petition for habeas relief a medical record that he "was looking EVERYWHERE for[.]" Id. at Doc. 17.

Because Carter has failed to meet his burden of establishing that he is entitled to any preliminary injunctive relief, Carter's motion for temporary restraining order, Doc. 120; motion for temporary injunction, Doc. 133; and motion for restraining order, Doc. 137 — all of which the Court has construed as motions for a preliminary injunction because the DOC Defendants were provided notice and responded — are denied.

## III.    DOC Defendants' Motion for Rule 11 Sanctions

The DOC Defendants move for Rule 11 sanctions against Carter based on Carter's repeated filing of motions based on dishonest and disingenuous claims containing unsupported factual allegations that cannot be reconciled with the record evidence. Doc. 140. This is the third request for Rule 11 sanctions the DOC Defendants have made. See Doc. 41 at 10–11; Doc. 62. In response to the DOC Defendants' first request for sanctions, this Court stated that Carter's claims appear to be dishonest and disingenuous and warned that if he continues to engage in such conduct, it may warrant sanctions. Doc. 47 at 15–16. This Court denied the DOC Defendants' second request for Rule 11 sanctions because they had not complied with Rule 11(c)(2)'s 21-day safe harbor provision. Doc. 112 at 5–6.

Prior to submitting the pending motion for Rule 11 sanctions, the DOC Defendants complied with Rule 11(c)(2)'s 21-day safe harbor provisions. Doc. 124 at 15 n.4. As discussed above and as the DOC Defendants outline in detail, see Docs. 124, 138, and 140, Carter's pending motions for preliminary injunction, like his previous motions for preliminary injunction, which triggered this Court to warn Carter that it will consider Rule 11 sanctions if he files further pleadings or motions or submits letters seeking affirmative relief that have no evidentiary support

and are contradicted by the record evidence, contain unsupported factual allegations[7] that cannot be reconciled with the record evidence. Thus, Carter is directed to show cause, no later than **March 19, 2025**, why this Court should not impose sanctions on him pursuant to Rule 11 of the Federal Rules of Civil Procedure. See Beaner v. United States, 361 F. Supp. 2d 1063, 1068–69 (D.S.D. 2005) (recognizing that Rule 11 applies to pro se parties).

## IV.    Conclusion

For these reasons, it is

ORDERED that Aramark's motion to dismiss, Doc. 86, is granted in part and denied in part. Aramark's motion to dismiss Carter's RLUIPA claim is denied. Carter's § 1983 claims against Aramark alleging a First Amendment free exercise claim for prison diet offerings and a Fourteenth Amendment equal protection claim for religious discrimination in prison diet offerings are dismissed without prejudice. It is further

ORDERED that Aramark must file its answer to Carter's amended complaint on or before **March 19, 2025**. It is further

ORDERED that Carter's motion for temporary restraining order, Doc. 120, motion for temporary injunction, Doc. 133, and motion for restraining order, Doc. 137, are denied. It is finally

ORDERED that Carter is directed to show cause, no later than **March 19, 2025**, why this Court should not impose sanctions on him pursuant to Rule 11 of the Federal Rules of Civil

---

[7] Carter did not submit any affidavits, declarations under penalty of perjury, or any documents in support of his motions.

Procedure.

DATED this 5ᵗʰ day of March, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE