UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MATTHEW CARTER,<br><br>Plaintiff,<br><br>vs.<br><br>ARAMARK CORRECTIONAL SERVICES, LLC, IN ITS INDIVIDUAL AND OFFICIAL CAPACITIES,<br><br>Defendant. | 4:22-CV-04103-RAL<br><br><br>OPINION AND ORDER GRANTING ARAMARK'S MOTION TO DISMISS |

Plaintiff Matthew Carter filed a pro se lawsuit under 42 U.S.C. § 1983. Doc. 1. This Court granted Carter leave to proceed in forma pauperis and ordered him to pay an initial filing fee. Doc. 6. After Carter timely paid his initial filing fee, this Court screened Carter's complaint under 28 U.S.C. § 1915A, dismissing the complaint in part and directing service upon defendants in part. Doc. 11. This Court granted Carter's motion to amend his complaint to add new defendants and to bring additional claims against existing defendants. Doc. 26 at 2. This Court then screened Carter's additional claims under 28 U.S.C. § 1915A. Id. at 2–18. Carter's First Amendment free exercise claim for prison diet offerings, his Religious Land Use and Institutionalized Persons Act ("RLUIPA") claim for prison diet offerings, and his Fourteenth Amendment equal protection claim for religious discrimination in prison diet offerings against Aramark Correctional Services, LLC ("Aramark") survived § 1915A screening. Id. at 6–10, 19–20. Aramark moved to dismiss Carter's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

upon which relief can be granted. Doc. 86. This Court granted in part and denied in part Aramark's motion to dismiss. Doc. 148.

Aramark's renewed Rule 12(b)(6) motion to dismiss Carter's only remaining claim is now pending. Doc. 156. This Court directed the parties to submit additional simultaneous briefs discussing Carter's official capacity RLUIPA claim. Doc. 157. Aramark's additional submission referenced matters outside of the complaint. Doc. 158. In accordance with Federal Rule of Civil Procedure 12(d), this Court notified the parties of its intent to treat Aramark's renewed motion to dismiss, Doc. 156, as a motion for summary judgment under Rule 56, and permitted the parties to submit additional materials pertinent to Aramark's renewed motion to dismiss no later than October 14, 2025. Doc. 159 at 2. Neither of the parties submitted any additional materials.

## I.   Factual Background

Because this Court, in accordance with Federal Rule of Civil Procedure 12(d), is treating Aramark's renewed motion to dismiss, Doc. 156, as a motion for summary judgment under Rule 56, this Court must recite the facts in the light most favorable to Carter. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). From the record, certain material facts are not subject to genuine dispute.

In February 2022, when Carter was first incarcerated at the South Dakota State Penitentiary (SDSP), Marlin's Inc. d/b/a CMG Management d/b/a Summit Food Service, LLC (Summit), was the contracted food service provider. Doc. 115 ¶ 4. Effective October 1, 2022, Aramark replaced Summit as the contracted food service provider at the SDSP. Doc. 27 at 3.

The South Dakota Department of Corrections' (SDDOC) Inmate Religious and Medical Diets Policy (1.5.F.2) provides that "[a]n inmate requesting a religious [or alternative] diet must complete a *Request for Religious Diet* . . . and submit the form to the facility's Cultural Activities

Coordinator." Doc. 102-14 at 2; Doc. 104 ¶ 65. According to the Religious and Medical Diets Policy, "[a]n inmate's request for a religious diet will be approved if providing the diet is within the inherent limitations of resources of the institution, does not burden the department's interest in preserving the security, safety and good order of the institution, or threaten the health and safety of the inmate or others." Doc. 102-14 at 2; Doc. 104 ¶ 66. The SDDOC and the Cultural Activities Coordinator (CAC) make the final decision whether an inmate is provided a special religious diet or food items. Doc. 115 ¶ 8.

Carter did not, as required by the Religious and Medical Diets Policy (1.5.F.2), complete and submit to Tammy Mertens-Jones, the CAC, a request for religious diet or alternative diet form. Doc. 107 ¶ 113; Doc. 115 ¶ 9. Carter sent a kite-request slip to Mertens-Jones dated October 21, 2022. Doc. 102-12; Doc. 107 ¶ 114. According to Carter's kite-request slip, the meals that Aramark/Summit, the DOC's contracted food provider, "makes [are] not honorable to [his] God (Satan)." Doc. 102-12 at 2; Doc. 107 ¶ 22; Doc. 115 ¶ 10. Carter indicated that he was "trying to get on a diet more pleasing to [his] God (Satan)[,]" and requested that Mertens-Jones help him get on a Satanic diet for his religion. Doc. 102-12 at 1–2; Doc. 107 ¶ 114; Doc. 115 ¶ 10.

Mertens-Jones responded to Carter's October 21, 2022 kite-request slip and stated that "[a]ccording to the Satanic temple, there are no religious dietary restrictions or requirements." Doc. 102-12 at 2; Doc. 107 ¶ 126. In a subsequent kite-request slip dated October 31, 2022, Carter acknowledged that Mertens-Jones was "very correct in finding that their [sic] are no dietary restrictions or requirements with [his] religion." Doc. 102-13 at 1; Doc. 107 ¶ 127. According to Carter, this means he sets his own requirements and chooses "whatever [he] see[s] fit and pleasing to eat and nourishing to the devil's temple." Doc. 102-13 at 1; Doc. 107 ¶ 128. In other words, "[i]t's whatever [he] choose[s] to eat more or less." Doc. 102-13 at 2; Doc. 107 ¶ 128. An inmate's

3

request for a religious diet must be "within the inherent limitations of resources of the institution[.]" Doc. 102-14 at 2; Doc. 115 ¶ 10. Permitting Carter to eat only what he sees as fit and pleasing to eat is not within the "inherent limitations of resources of the institution." Doc. 107 ¶ 131; Doc. 115 ¶ 10. The SDDOC and the CAC did not approve Carter's request for a Satanic diet. Doc. 115 ¶ 9.

## II. Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if "a reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011) (citation omitted). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

### B. Analysis

In his amended complaint, Carter sues Aramark in its individual and official capacity and seeks monetary damages as well as equitable relief. Doc. 13-1 at 2; Doc. 27 at 2. Specifically, he

4

wants "to be allowed the Satanic diet of [his] chosing [sic] that is pleasing to [his] God (Including Satanic Holidays.)" Doc. 18 at 1. Aramark argues that Carter's claim for damages under RLUIPA should be dismissed because "RLUIPA does not permit suits against officers in their individual capacities, which, in turn, means claimants cannot recover monetary damages." Doc. 156 (citing Barnett v. Short, 129 F.4th 534, 542–43 (8th Cir. 2025)). Aramark correctly recognizes that the United States Court of Appeals for the Eighth Circuit has held that a county employee sued in his individual capacity cannot be liable for monetary damages under RLUIPA because a county official sued in his official capacity did not voluntarily and knowingly accept federal funding conditioned upon complying with RLUIPA. Barnett, 129 F.4th at 542–44. But the Eighth Circuit has never held that a private corporation that enters into a contract with the State of South Dakota cannot be liable for damages under RLUIPA.[1] Further, while Aramark argues that it "is not a direct recipient of the federal funds granted to the state prison institution[]" and "would have no notice of the conditions imposed on them," Doc. 156 at 4, Aramark's contract with the State of South Dakota is not a part of the record. Without reviewing Aramark's contract with the State of South Dakota, this Court is not willing to conclude, as a matter of law, that Aramark cannot be liable for damages under RLUIPA because it did not have notice of the conditions imposed on them.

---

[1] Aramark also argues, without citing to any Eighth Circuit authority, that RLUIPA does not authorize vicarious liability claims. Doc. 156 at 3–4. As this Court explained when denying Aramark's initial motion to dismiss, in Barnett, the Eighth Circuit recognized that it has not considered this issue. Doc. 148 at 5–6 (citing Barnett, 129 F.4th at 542). Some district courts have found that a governmental entity can be vicariously liable under RLUIPA. Id. (citing cases). Although Aramark again raises the same argument, Aramark again does not cite any authority specifically holding that RLUIPA does not authorize vicarious liability claims. As explained infra, because Carter's RLUIPA claim against Aramark fails as a matter of law for other reasons, it is not necessary for this Court to decide whether RLUIPA authorizes vicarious liability claims.

5

In this case, however, whether Aramark can be liable for damages under RLUIPA is not dispositive. Here, Carter's damage claim against Aramark, if viable, fails as a matter of law for the same reason that his claim for injunctive relief against Aramark fails as a matter of law. Carter's RLUIPA claim against Aramark arises from the denial of his request for Satanic diet. Doc. 27 at 4. But there is no record evidence that Aramark, the contracted food service provider, had any involvement in the decision to deny Carter's request for a Satanic diet. Rather, it is undisputed, based on the record evidence, that the SDDOC and the Cultural Activities Coordinator (CAC) make the final decision whether an inmate is provided a special religious diet or food items. Doc. 115 ¶ 8. Further, as detailed above, see supra at 2–4, that is what happened when Carter requested a Satanic diet. Carter did not respond to this Court's Order directing the parties to submit additional briefs "addressing Carter's official capacity claim against Aramark, including whether Aramark was aware of Carter's request for a religious diet or in any way involved in the denial of his request for a religious diet." Doc. 157 at 2. There is no record evidence that Aramark was aware of Carter's request for a Satanic diet or in any way involved in the denial of his request for a Satanic diet. Carter's bare allegation in his amended complaint, Doc. 27 at 4, that Aramark ignored his need for a religious diet and forced him "to eat 'dog slop,' instead of what is pleasing to [his] God[]" is insufficient to create a genuine issue of fact. See New York Life Ins. Co. v. Torrence, 592 F. Supp. 3d 836, 840 (D.S.D. 2022) ("A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in his pleadings but must set forth specific facts showing that there is a genuine issue for trial." (internal quotation omitted)).

### III. Conclusion

Accordingly, it is

ORDERED that Aramark's motion to dismiss, Doc. 156, which this Court is treating as a motion for summary judgment under Federal Rule of Civil Procedure 56, see Doc. 159, is granted, and Carter's RLUIPA claim against Aramark is dismissed on the merits and with prejudice.

DATED this 31st day of October, 2025.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE